29 C.C.P.A.(Patents)

## LOFTIN, etc. v. SMITH.

### Patent Appeal No. 4584.

Court of Customs and Patent Appeals.
March 23, 1942.

Edward H. Loftin, of Washington, D. C., pro se.

Stephen H. Philbin and James G. Norton, both of New York City, for appellees.

Before GARRETT, Presiding Judge, and BLAND, HATFIELD, LENROOT, and Jackson, Associate Judges.

BLAND, Associate Judge.

This is an appeal in a United States Patent Office interference proceeding.

The interference was declared on claims 1 and 3 to 11, inclusive, of Tubbs' patent 1,977,536, issued October 16, 1934, upon an application filed November 25, 1932, said claims in said Tubbs patent having been copied in an application of Smith which was filed January 31, 1933. Loftin is Tubbs' assignee and appeared pro se in this court.

The Examiner of Interferences awarded priority of all the counts in issue, 1 to 10, inclusive, to the junior party Smith, and upon appeal to the Board of Appeals his decision was affirmed. From the decision of the board, appellant has here appealed.

The invention involved may be fairly well understood from a reading of the counts. The Examiner of Interferences described it as follows:

"This interference relates to a modulation system including an electron discharge device having at least five electrodes i. e., a cathode, three grids and an anode. The inner grid has impressed upon it a

negative bias and an alternating current, the intermediate grid has impressed upon it a positive potential and the outer grid has impressed upon it an alternating current and a negative bias of such magnitude that the grid can not swing positive even at the peak of the positive portion of the cycle of the impressed alternating current thus substantially no electrons are drawn from the electron stream and fidelity of modulation is thereby enhanced. The system is used particularly in superheterodyne radio receivers in which the alternating current signal is impressed on one grid and the alternating current from a local oscillator is impressed on another grid to produce an intermediate frequency in the plate circuit. * * *"

Count 1 is illustrative of the subject matter of all the counts and follows: "1. In an electrical system the combination of a continuous electron discharge path comprising an electron omitting cathode and a positively energized anode, a plurality of negatively energized electrodes spaced between said cathode and anode and electrostatically isolated from each other by an electrode interposed therebetween, a plurality of sources of oscillations, and means for impressing different ones of said oscillations upon different ones of said negatively energized electrodes, the negative energizing of a one of said electrodes between said interposed electrode and said anode being so proportioned that substantially no current is thereby drawn from said electron discharge path during operation, whereby fidelity of operation is enhanced."

Both parties took testimony. The party Smith was an employee of the R.C.A. Victor Company and worked under one Loughren. Smith was directed to carry out certain experiments in developing a detector oscillator after Smith had discovered that a pentode tube could be successfully operated with a negative potential on the outer grid. Hollands, an employee of the RCA Manufacturing Company, Radiotron Division, testified to the testing of the tubes prepared by Smith.

The Examiner of Interferences and the Board of Appeals gave Smith a date for reduction to practice of the involved invention "by December 29, 1931." Smith claims an earlier date, but in view of our conclusion that Tubbs is entitled to no earlier date, it is not necessary to consider the activities of Smith prior to December 29, 1931.

The said reduction to practice date of Smith is challenged by Tubbs, chiefly in that he contends that Smith is not the real inventor and that others working with him are entitled to the credit. Both tribunals below correctly held that this contention was untenable. The courts have frequently said that in an interference proceeding of this character it avails nothing for one of the contestants to contend that the other party is not the real inventor, and that the invention was made by a third party. Raymond et al. v. Wickersham, 27 C.C.P.A., Patents, 1079, 110 F.2d 863, and authorities therein cited.

The Examiner of Interferences rendered his first decision awarding priority to Smith on February 23, 1938. Appellant appealed to the board, and the board rendered its decision affirming that of the examiner on August 4, 1939. Although all the facts are not found in the record, it appears that Tubbs, after the board's first decision, successfully petitioned the commissioner to direct that the case be remanded to the examiner for the purpose of introducing additional evidence relevant to priority. The deposition of one Gerald J. Kelley was then introduced. The Examiner of Interferences held in a second decision, July 23, 1940, that the additional evidence did not change the situation from that which existed at the time the Board of Appeals affirmed his prior decision, and he again awarded priority of invention in the counts to Smith. Upon appeal to the board, it, in its second decision, February 10, 1941, came to the concluson that "there is nothing in the new evidence submitted by Tubbs to disturb this holding" (referring to its prior holding).

We have examined the Smith record with care and find that he is entitled to a date for reduction to practice of the invention involved at least as early as that found by the tribunals below, December 29, 1931. The evidence is discussed in the concurring decisions of the tribunals below, and it will serve no useful purpose to repeat the same facts and conclusions here.

We will proceed to consider the contentions and proof of Tubbs. Tubbs claims to have afforded proof that he introduced the invention into this country in 1930. He claims to have made the invention in Denmark in April, 1928, and disclosed it by letter and accompanying diagrams (Exhibit 4) to his friend, Emil W. Dinga, in this country, and that said Exhibit 4 is evidence

of such disclosure. As evidence of disclusive, Tubbs also relies on Exhibit 1, which is a page from his notebook.

We have examined these exhibits and agree with the tribunals below that they do not afford evidence of a disclosure of the invention of the counts to Dinga. There is some discrepancy between the dates of disclosure alleged by Tubbs and those testified to by Dinga. Tubbs disclosed the invention to Loftin in 1932, and Tubbs here argues that he made the same disclosure to Dinga on the earlier date. The record does not sustain this contention. However, assuming that Tubbs' is entitled to the earlier date contended for, for conception and disclosure of the invention of the involved counts, we agree with the findings of the tribunals below that there is no diligence shown, which can be accepted here on the part of Tubbs, at the critical time during 1931 when Smith entered the field.

Tubbs alleged in his preliminary statement the following: "That the invention was introduced into the United States by deponent at the time of his arrival therein at New York, state of New York, sometime during the first half of the month of August in the year 1930; that deponent made a drawing and accompanying brief description in a notebook of deponent's on or about April 11, 1932, in the city of New York, and state of New York, and, at the same time, disclosed the invention to one Emil W. Dinga in the city of New York, state of New York; *that at about the same time deponent began actively exercising reasonable diligence* in adapting and perfecting the invention of the counts of the interference, and arranging for the patenting of same; * * *" (Italics ours)

Appellant, in substance, alleged in his preliminary statement that his diligence began on or about April 11, 1932. Both tribunals concurred in limiting the time when Tubbs' alleged diligence began to the time stated in his preliminary statement, the board specifically stating that "such statements are therefore binding upon him." The Examiner of Interferences on this phase of the law cited Funk v. Haines & Matteson, 20 App.D.C. 285.

Tubbs, as we understand his contentions, does not urge that he has shown actual diligence in reducing his invention to practice but contends that he has shown an excuse for not being diligent at the critical

period. After citing authorities, some of which related to poverty, accompanied by efforts to obtain means to prosecute a reduction to practice, he has the following to say: "Appellant has been unable to find any case, and the extent of his search therefor leads him to believe that none exists, in which the inventor was, like Tubbs, completely blocked from taking any steps towards an actual reduction to practice during a period of over two years after conception because of the non-existence, and long continued non-existence, of means necessary to make up the heart of his invention, the practicability of which others disputed, namely a thermionic tube having at least two properly designed control grids electrostatically isolatable from each other by a properly designed, interposed therebetween screen grid, with each of said grids in communication with the outside with its own separate and electrically independent external connection; and appellant believes that because of this insurmountable barrier between Tubbs and an actual reduction to practice prior to June, 1932, and the above cited authorities with respect to other barriers less severe, the Examiner of Interferences and the Board of Appeals were equipped with an abundance of authority for awarding priority of the invention in issue to Tubbs * * *."

█ There is some dispute between the parties about whether or not a tube of the kind required could have been obtained during the critical period. Smith obtained one, and surely it could not properly be said that Tubbs' waiting for someone to devise this important element of his invention so that he could construct it and test or use it, will excuse lack of diligence required by the statute.

Tubbs in his 15th reason of appeal questions the correctness of the board in holding that the Smith application "supports copying the counts" in issue by Smith. The board made no reference to this matter in its second decision, although in its first decision it had the following to say on the subject: "Appellant also raises the question of the right of the party Smith to make the claims on appeal. This question was discussed by the Primary Examiner in his decision of June 9, 1936, in connection with the Tubbs motion to dissolve. Appellant points out that Smith's application refers to the control grids as

being 'preferably negative' but in other parts of the Smith specification he refers to the control grids operating preferably on the linear portion of the anode-current, grid-bias characteristic curve. There is also a quotation from page 13, discussing the operation of the species * * * referred to by the examiner who held that, considering all of this record, Smith evidently had the thought of providing a negative bias sufficient to prevent grid current from flowing on the peak voltage of the positive half of the a.c. impressed on the grid. Tubbs, in discussing the Smith disclosure, does not refer to all the statements in the Smith specification as discussed by the examiner. We are of the opinion the examiner was correct in his decision."

Appellant's appeal here purports to be an appeal from both decisions of the board. The board did not incorporate its first decision into its second one and in the second decision the board did not pass upon Smith's right to make the counts.

It may be suggested that appellant's appeal from the first decision is untimely, and upon the instant record the question as to whether or not Smith's application supports the counts is not before us. We prefer, however, to consider the appeal as taken from the second decision, the remand having suspended the necessity of appeal from the first decision. We think appellant had the right before the board, and has the right here, to question the sufficiency of Smith's application to support the counts. We will consider the ruling on this question in the board's first decision as being adhered to, although not definitely referred to in its second decision, and therefore think that appellant's 15th reason of appeal presents an issue for our decision.

On this phase of the case, we are in agreement with the above-quoted language of the Board of Appeals. It will be noticed that the board refers to the decision of the Primary Examiner who discussed this question on "June 9, 1936." The decision of the Primary Examiner is not in the instant record and we do not have the advantage of this ruling. The board has based its decision upon the decision of the Primary Examiner, and if Tubbs wished to have us give proper consideration to the decision of the board, he should have incorporated the decision of the Primary Examiner in the record. But, be this as it may, we have examined the Smith specification in the particulars pointed out by the board which evidently were extensively discussed by the Primary Examiner, and it seems to us that its position is sound, and that Smith has disclosed in his application all the elements of all the counts involved.

Appellant's 14th reason of appeal is as follows: "14. The Board of Appeals erred by not holding that the delay from October, 1931, to January 31, 1933, in filing the Smith application is not explained and, accordingly, is not excusable."

As the issue is presented here, if Smith reduced his invention to practice in October, 1931, the said delay until January 31, 1933, in filing his application needs no explanation. There is no contention here that the Smith application related to an abandoned experiment nor is the rule akin to the doctrine of estoppel applicable in Mason v. Heyburn, 13 App.D.C. 86, urged.

From the foregoing it follows that the board committed no error in affirming the decision of the Examiner of Interferences in awarding priority of the invention defined by the counts to the junior party Smith, and its decision so doing is affirmed.

Affirmed.